# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-MJ-3527-LETT

```
FILED BY____KAN____D.C.

        Aug 8, 2025

      ANGELA E. NOBLE
    CLERK U.S. DIST. CT.
   S. D. OF FLA. - Miami
```

**IN RE SEALED COMPLAINT**

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   _/s/ Elena Smukler_____
Elena Smukler
Assistant United States Attorney
Florida Bar No. 91025
United States Attorney's Office
99 NE 4th Street, 6th Floor
Miami, FL 33132
Tel.: 305-619-5626
Email: elena.smukler@usdoj.gov

ₐAO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ANTWAN BAILEY, and | ) | Case No.   25-MJ-3527-LETT |
| EDDIE GENE WORTHY, JR. | ) | |
| | ) | |
| | ) | |
| _Defendants._ | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   December 16 2024-August 7, 2025   in the counties of      Miami-Dade County      in the

_____Southern_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute a Controlled Substance |
| 21 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime (WORTHY only) |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Emily Disney, Special Agent, FBI
_Printed name and title_
Credential #26786

Attested to by the Applicant in accordance with the requirements of Fed. R. Crim.P. 4.1 by  Telephone

Date:  August 8, 2025

_____
_Judge's signature_

City and state:          Miami, Florida

Honorable Enjoliqué A. Lett, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Emily Disney, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.        I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since August 2016. I am currently assigned to the FBI's Miami Field Office, specifically to the Miami-Dade County Safe Streets and Violent Gangs Task Force. Prior to becoming a Special Agent with the FBI, I was employed as an Assistant District Attorney in Olathe, Kansas from 2013 to 2016. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I am further authorized to execute and serve search warrants under Title 21, United States Code, Section 878. As part of my professional duties and responsibilities, I have become familiar with the investigative methods and enforcement of state and federal drug laws. During my career in law enforcement, I have received training from the FBI related to the methods used by narcotics traffickers to import and distribute narcotics and the laundering of narcotics proceeds. I have personally been involved in the numerous investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds

2.        I submit this Affidavit in support of a criminal complaint charging **Antwan Bailey ("BAILEY")** with Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute a controlled substance) and Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance). I also submit this Affidavit in support of a criminal complaint charging **Eddie Gene Worthy, Jr. ("WORTHY")** with Title 21, United States Code, Section

1

841(a)(1) (possession with intent to distribute a controlled substance), Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance), and Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a drug trafficking crime).

3.    This Affidavit is based on my personal investigation and investigation by others, including federal and local law enforcement officials whom I know to be reliable and trustworthy. The facts and information contained in this Affidavit are based on my personal knowledge and observation, as well as information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation, as well as my review of records, documents, and other physical items obtained during the course of this investigation. This Affidavit does not include every fact known to me about this investigation, but rather only those facts sufficient to establish probable cause.

## PROBABLE CAUSE

### Background Investigation

4.    Law enforcement is investigating a drug trafficking organization ("DTO") that is distributing cocaine in the Southern District of Florida. On or about December 16, 2024, the FBI received information that illegal narcotics were being trafficked through a restaurant called "Brother and Sister BBQ."

5.    "Brother and Sister BBQ" is located at 4530 NW 27th Avenue, Miami (hereinafter, "Brother and Sister BBQ"). Directly south of Brother and Sister BBQ is 4520 NW 27th Avenue, which is one retail plaza with multiple storefronts, including "Wet -n- Wild Tattoos" in Unit 1 (hereinafter, "Wet -n- Wild Tattoos"), "Late Nite Willie's Restaurant" in Units 2-3 (hereinafter, "Late Nite Willie's"), and "46 Street Smoke Shop" in Unit 4 (hereinafter, "46 Street Smoke Shop"). The four businesses (Wet -n- Wild Tattoos, Late Nite Willie's Restaurant, 46 Street Smoke Shop,

2

and Brother and Sister BBQ) share a parking lot (hereinafter, the "Parking Lot"). There is only one entrance/exit to the shared Parking Lot.

## Controlled Substance Purchase on February 26, 2025

6.      On or about February 26, 2025, an FBI confidential source (hereinafter, "CHS 1"[1]) conducted a controlled narcotics purchase from BAILEY. CHS-1 met with law enforcement before the purchase, was searched, and provided with funds to make the purchase. The purchase was recorded on audio and video.

7.      On or about February 26, 2025, CHS-1 approached the rear window of Brother and Sister BBQ and made contact with BAILEY. CHS-1 requested to purchase fentanyl at approximately 12:05 p.m., on or about February 26, 2025. BAILEY told CHS-1 that he did not have that available, but that he could get it delivered.

8.      At approximately 1:44 p.m., a black Chrysler 300 vehicle bearing tag L2JMV (hereinafter, the "Chrysler 300") arrived at the parking lot associated with Brother and Sister BBQ. *See* Exhibit A, below.



**EXHIBIT A:** Still photograph of the Chrysler 300 arriving to the rear parking lot of Brother and Sister BBQ on 2-26-2025.

---

[1] CHS-1 has been found to be reliable and credible based on their work on previous cases.  CHS-1 receives a benefit, in the form of payment, for their work. CHS-1 has no convictions for crimes of dishonesty.

9.      At approximately 1:45 p.m., BAILEY approached the driver's side door of the Chrysler 300. BAILEY then returned to the back patio of Brother and Sister BBQ. At approximately 1:46 p.m., BAILEY walked over to a blue Lexus bearing Florida license plate 22AAXS parked behind Brother and Sister BBQ. A search of law enforcement databases revealed that the Lexus is registered to BAILEY (hereinafter, "BAILEY's Vehicle"). BAILEY entered BAILEY's Vehicle via the driver's side door at approximately 1:46 p.m.

10.      At approximately 1:49 p.m., CHS-1 approached the passenger side of BAILEY's Vehicle; he then returned to his own vehicle to count out the payment to be made to BAILEY. BAILEY then exited BAILEY's Vehicle and entered the rear of Late Nite Willie's. At approximately 1:54 p.m., BAILEY exited Late Nite Willie's and returned to BAILEY's Vehicle, entering again via the driver's side door. BAILEY then exited BAILEY's Vehicle and returned to the Chrysler 300 at approximately 1:54 p.m. and made contact with the driver of the Chrysler 300 via the driver's side door. BAILEY then returned to BAILEY's Vehicle, entering through the driver's side door. At approximately 1:56 p.m., CHS-1 entered the front passenger side of BAILEY's Vehicle. Inside BAILEY's Vehicle, BAILEY provided CHS-1 with a bag filled with a brown powdery substance of suspected fentanyl. CHS-1 paid BAILEY for the suspected fentanyl and then exited BAILEY's Vehicle. BAILEY then exited BAILEY's Vehicle and approached the driver's side door of the Chrysler 300.  The purchase price for the suspected fentanyl was $5,600. CHS-1 provided the narcotics to law enforcement.

4



**EXHIBIT B:** Still photograph of BAILEY in his Lexus with a bag containing brown powder



**EXHIBIT C:** Still photograph of BAILEY in his Lexus with the payment provided by CHS-1

11.    The Chrysler 300 departed the parking lot at approximately 2:04 p.m.

12.    As CHS-1 was debriefing with the FBI Agents following the controlled purchase of narcotics, it was determined that CHS-1 had overpaid for the narcotics. CHS-1 called BAILEY at the number BAILEY had provided to him –xxx-xxx-2751 (hereinafter, "BAILEY's Number") – and discussed the overpayment. BAILEY agreed to meet back up with CHS-1 to return the money to him. CHS-1 and BAILEY met at the Parking Lot and BAILEY returned the extra money to CHS-1.

13.     The bag containing suspected fentanyl was sent to the DEA Lab for testing. Results from the testing confirmed the suspected fentanyl to be a 114.7 grams mixture containing a composite of fentanyl, heroin, and other substances.

### Controlled Substance Purchase on March 18, 2025

15.     On or about March 18, 2025, CHS-1 conducted a controlled narcotics purchase from BAILEY. CHS-1 met with law enforcement before the purchase, was searched, and provided with funds to make the purchase. The purchase was recorded on audio and video. CHS-1 made contact with BAILEY in the Parking Lot at approximately 3:00 p.m., on or about March 18, 2025. BAILEY invited CHS-1 to enter Willie's Late Nite with him. BAILEY and CHS-1 entered Willie's Late Nite through a black door marked "3." CHS-1 observed BAILEY retrieve a bag of powder from a closet within Willie's Late Nite. BAILEY then weighed out a quantity of powder and packaged the powder. CHS-1 provided payment to BAILEY.  CHS-1 provided the narcotics to law enforcement. The suspected fentanyl powder was sent to the DEA Lab for testing. The results from the DEA Lab confirmed the suspected fentanyl powder to be a 112.9 grams mixture containing a composite of fentanyl, heroin, cocaine, and other substances.

16.     At approximately 7:15 p.m. on the same date, CHS-1 re-approached BAILEY in the Parking Lot, requesting to purchase more fentanyl. BAILEY and CHS-1 again entered the black door marked "3" associated with Willie's Late Nite. CHS-1 observed BAILEY remove a bag from the closet inside Willie's Late Nite. BAILEY then weighed out the fentanyl powder. CHS-1 paid BAILEY for the purchase. At approximately 7:49 p.m., law enforcement observed BAILEY exit Willie's Late Nite and enter BAILEY's Vehicle. CHS-1 provided the narcotics to law enforcement. The suspected fentanyl powder was sent to the DEA Lab for testing. The results

from the DEA Lab confirmed the suspected fentanyl powder to be 196.9 grams of a mixture containing a composite of fentanyl, heroin, and other substances.



**EXHIBIT D:** Still photograph of BAILEY retrieving the suspected fentanyl powder from the closet inside Willie's Late Nite to sell to CHS-1.

### Additional Investigation and Controlled Substance Purchases June 2025 – July 2025

17.     On or about June 13, 2025, at approximately 7:36 p.m., BAILEY was captured by video surveillance exiting BAILEY's Vehicle in the Parking Lot. BAILEY appeared to get into a verbal altercation with the driver of a black vehicle. BAILEY then entered the door marked "3" associated with Willie's Late Nite. Shortly thereafter, BAILEY exited Willie's Late Nite. Video surveillance captured what appears to be a firearm in BAILEY's hand and in his pocket. *See* Exhibit E, below. The driver of the other black vehicle departed from the Parking Lot. BAILEY thereafter entered BAILEY's Vehicle and exited the Parking Lot.



**EXHIBIT E:** Four still photographs of BAILEY carrying a firearm.

18.     On or about June 26, 2025, CHS-1 made two phone calls to BAILEY at BAILEY's Number. Both phone calls went unanswered. CHS-1 then entered the Parking Lot and made contact with BAILEY in person. When BAILEY saw CHS-1, BAILEY stated, "I ain't got shit right now, that's why I didn't answer. I ain't got shit." BAILEY told CHS-1 that "shit been kinda crazy with that shit". When leaving, CHS-1 told BAILEY to notify CHS-1 if BAILEY had anymore. BAILEY responded, "I got you locked in."

19.     On or about July 18, 2025, CHS-1 entered the Parking Lot. CHS-1 had met with the law enforcement before and was searched and provided with funds to purchase narcotics. CHS-1 then knocked on door marked "3," associated with Willie's Late Nite, and made contact with WORTHY, who was inside of Willie's Late Nite. WORTHY arranged to sell 32 grams of suspected heroin to CHS-1. The purchase was recorded on audio and video. CHS-1 and WORTHY agreed to a price. CHS-1 told WORTHY which vehicle CHS-1 would be in. CHS-1 returned to CHS-1's vehicle; WORTHY then entered the door marked "3" associated with Willie's Late Nite. WORTHY then exited from the door marked "3," and approached the door associated with Wet -n- Wild Tattoos. As WORTHY approached Wet -n- Wild Tattoos, an unidentified black male in a

gray tank top exited Wet -n- Wild Tattoos, made contact with WORTHY, and then immediately walked directly to CHS-1's vehicle, where he delivered the package of suspected heroin to CHS-1. CHS-1 provided the unidentified male with currency for the purchase. CHS-1 provided the narcotics to law enforcement. The suspected heroin was sent to the DEA Lab for testing. The results are pending.



**EXHIBIT F:** Photograph of WORTHY speaking to CHS-1 outside the door marked "3," associated with Willie's Late Nite.

20.     On or about August 7, 2025, CHS approached the rear of Willie's Late Nite. CHS-1 had met with law enforcement before and was searched and provided with funds to purchase narcotics. After knocking on the door marked "3" associated with Willie's Late Nite, CHS-1 made contact with WORTHY. WORTHY arranged to sell cocaine and marijuana to CHS-1. CHS-1 followed WORTHY from the front of Willie's Late Nite to Wet -n- Wild Tattoos. Once inside Wet -n- Wild Tattoos, CHS-1 provided payment to WORTHY. An unidentified black male then handed CHS-1 a backpack containing two clear plastic baggies of white powder and one larger plastic bag containing green buds consistent with marijuana. CHS-1 observed that WORTHY had what appeared to be a firearm on his right hip. At one point, CHS-1 offered to WORTHY to "buy that off your hip." WORTHY acknowledged CHS-1's request but declined to sell CHS-1 the

firearm. Photos of WORTHY show a bulge on his hip, consistent with WORTHY carrying a firearm. *See* Exhibit H, below. CHS-1 then exited Wet -n- Wild Tattoos, returned to CHS-1's vehicle, and left the area. CHS-1 provided the narcotics purchased to law enforcement. The purchase was recorded on audio and video. The clear small baggies containing white powder were field tested with positive results for cocaine. The suspected cocaine and marijuana were shipped to the DEA lab for testing. The results are pending.



**EXHIBIT H:** Marked photograph of WORTHY with a bulge on his hip, consistent with WORTHY carrying a firearm, as observed by CHS-1

## CONCLUSION

14.    Based upon the information provided above, I respectfully submit that probable cause exists, that **Antwan BAILEY** did commit violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute a controlled substance) and Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance). I respectfully submit that probable cause exists that **Eddie Gene WORTHY, Jr.** did commit violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute a controlled substance), Title

21, United States Code, Section 846 (conspiracy to distribute a controlled substance), and Title 18, United States Code, Section 924(c) (possession of a firearm in furtherance of a drug trafficking crime).

**FURTHER AFFIANT SAYETH NAUGHT.**

EMILY DISNEY
SPECIAL AGENT   Credential #26786
FEDERAL BUREAU OF INVESTIGATION

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone this __8th__ day of August 2025.

HONONRABLE ENJOLIQUÉ A. LETT
UNITED STATES MAGISTRATE JUDGE